UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL SMITH,

          Plaintiff,

v.

ECLIPSE LEGAL SOLUTIONS LLC,
KSL ENTERPRISES UNITED INC.,
HORIZON MEDIATION LLC,
HORIZON PROCESSING & MEDIATION LLC, and
KELVIN STEFON  LYLES,

          Defendants.

_____/

## COMPLAINT

**I.    Introduction**

1.    Plaintiff is a victim of credit identity theft, whose stolen personal and financial information was used to create a counterfeit account and fake debt. Defendants are debt collectors and credit identity thieves who acquired and used the stolen information and counterfeit account to contact and falsely threaten Plaintiff with litigation, prosecution and other adverse consequences, and coerce the payment of money from Plaintiff.

2.    Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq*., Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*

3.    Defendants, along with other entities and individuals to be identified in discovery,

1

are involved in a large, elaborate, and ongoing scheme to contact consumers across the country and falsely threaten litigation and other adverse consequences unless the consumers pay money to Defendants to supposedly satisfy counterfeit, paid, or time-barred debts. Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

     4.     These schemes are epidemic and are operated by thousands of entities located in and around Los Angeles, California, Jacksonville, Miami and Orlando, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

     5.     On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

     6.     On September 29, 2020, the "Federal Trade Commission, along with more than 50 federal and state law enforcement partners . . . announced a nationwide law enforcement and outreach initiative to protect consumers from phantom debt collection and abusive and threatening debt collection practices . . . [with two new FTC cases against companies that] were trying to collect debts they cannot legally collect or that a consumer does not owe – a practice known as phantom debt collection." See https://www.ftc.gov/news-events/press-releases/2020/09/ftc-state-federal-law-enforcement-partners-announce-nationwide.

7.      The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information. It is an express violation of the FDCPA to commit a crime in connection with the collection of any debt.

## II.    Jurisdiction

8.      The Court has subject matter jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. The Court has supplemental jurisdiction regarding Plaintiff's state law claims under 28 U.S.C. § 1367. The Court has personal jurisdiction over each Defendant because each Defendant purposefully availed itself/himself/herself of the privilege of acting in Michigan, by contacting and threatening Plaintiff by telephone, email and letter, with actual knowledge that Plaintiff resided and was physically present in Michigan when each of those communications took place, and caused Plaintiff's injuries to occur in Michigan.

## III.    Parties

9.      Plaintiff Daniel Smith is an adult, natural person residing in Michigan. Plaintiff is a "consumer" and "person" as the terms are defined and used in the FDCPA. Plaintiff is a "person" as the term is defined and used in the DPPA. Plaintiff is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

10.      Defendant Eclipse Legal Solutions LLC ("ELS") is a Delaware limited liability company, formed on or about January 12, 2024. ELS became authorized to transact business in

Georgia on September 19, 2024. ELS has filed documents with the Georgia Secretary of State, stating that the ELS "Principal Office Address" is 1201 West Peachtree Street NW, Suite 2625, Atlanta, Georgia 30309, but the address is merely a Regus virtual office. ELS likely operates at 200 Ashford Center North, Suite 175, Dunwoody, Georgia 30338. ELS is managed by defendants KSL Enterprises United Inc. and Kelvin Stefon Lyles. The registered agent for ELS in Georgia is Republic Registered Agent LLC, 113 S. Perry Street, Suite 206, Lawrenceville, Georgia 30046. The registered agent for ELS in Delaware is Republic Registered Agent LLC, 254 Chapman Road, Suite 209, Newark, Delaware 19702. ELS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ELS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ELS is a "debt collector" as the term is defined and used in the FDCPA. ELS is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, ELS is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

11.     On January 25, 2024, Defendants registered through IONOS Inc., the internet domain www.eclipselegalsolutions.com, that links to an active website that falsely describes ELS as providing "service . . . to self-representing (pro se) consumers, guiding them through the intricate process of preparing and typing essential legal documents to meet court standards," and provides the contact telephone number 678-662-8860, which is a wireless telephone number, registered to defendant Kelvin Stefon Lyles, 4514 Chamblee Dunwoody Road, "Suite 177," Atlanta, Georgia 30338, which is merely a private mailbox (No. 177) rented by Mr. Lyles from The UPS Store No. 1404. Calls placed to the telephone number are answered personally by Mr. Lyles. Defendants use the domain to communicate with their victims, using multiple email addresses, including arbitration@eclipselegalsolutions.com and

admin@eclipselegalsolutions.com.

12.    ELS through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Plaintiff that are described in this complaint.

13.    ELS through its employees and agents directly and indirectly participated in the acquisition, disclosure and use of Plaintiff's stolen, private, personal, financial and account information, without a permissible purpose, as described in this complaint.

14.    Defendant KSL Enterprises United Inc. ("KSLEU") is a Wyoming corporation, formed on or about May 31, 2023. KSLEU has filed documents with the Wyoming Secretary of State, stating that the KSLEU "Principal Offices" is at 5830 E 2nd Street, Suite 7000 #9679, Casper, Wyoming 82609, but the address is merely a virtual office. KSLEU likely operates at 200 Ashford Center North, Suite 175, Dunwoody, Georgia 30338. The registered agent for KSLEU is Republic Registered Agent LLC, 5830 E 2nd Street, Suite 7000, Casper, Wyoming 82609. The KSLEU 2024 Annual Report states that defendant Kelvin Stefon Lyles is the company's President, Director, Secretary and Treasurer. KSLEU uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. KSLEU regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. KSLEU is a "debt collector" as the term is defined and used in the FDCPA. KSLEU is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, KSLEU is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

15.    KSLEU through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Plaintiff that are described in this complaint.

16.    KSLEU through its employees and agents directly and indirectly participated in the acquisition, disclosure and use of Plaintiff's stolen, private, personal, financial and account

information, without a permissible purpose, as described in this complaint.

17.    Defendant Horizon Mediation LLC ("HM") is a Georgia limited liability company, formed on or about April 28, 2014. The HM Annual Registration filed by defendant Kelvin Stefon Lyles with the Georgia Secretary of State on March 4, 2024 states that the HM "Principal Office Address" is 3340 Peachtree Road NE, Suite 1800, Atlanta, Georgia 30331, but the address is merely a Regus virtual office. HM likely operates at 200 Ashford Center North, Suite 175, Dunwoody, Georgia 30338. Mr. Lyles is a member/manager of HM. The registered agent for HM is Republic Registered Agent LLC, 113 S. Perry Street, Suite 206, Lawrenceville, Georgia 30046. HM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. HM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. HM is a "debt collector" as the term is defined and used in the FDCPA. HM is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, HM is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

18.    On July 2, 2020, Defendants registered through IONOS Inc., the internet domain www.horizonmediationllc.com, that links to an active website that describes HM as a provider of "professional consulting and financial solutions" for businesses and individuals, with the contact telephone number 470-474-6940, and supposedly doing business at 3340 Peachtree Road NE, Suite 1800, Atlanta, Georgia 30331, but the address is merely a Regus virtual office. Defendants use the domain to communicate with their victims, using multiple email addresses, including admin@horizonmediationllc.com.

19.    HM through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Plaintiff that are described in this complaint.

20.    HM through its employees and agents directly and indirectly participated in the acquisition, disclosure and use of Plaintiff's stolen, private, personal, financial and account information, without a permissible purpose, as described in this complaint.

21.    Defendant Horizon Processing & Mediation LLC ("HPM") is a Delaware limited liability company, formed on or about March 5, 2020. HPM likely operates at 200 Ashford Center North, Suite 175, Dunwoody, Georgia 30338. The registered agent for HPM is Legalinc Corporate Services Inc., 131 Continental Drive, Suite 305, Newark, Delaware 19713. HPM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. HPM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. HPM is a "debt collector" as the term is defined and used in the FDCPA. HPM is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, HPM is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

22.    On February 14, 2020, Defendants registered through IONOS Inc., the internet domain www.horizonprocessingllc.com, that automatically redirects to the internet domain www.hpmediationllc.com. Defendants use the domain to communicate with their victims, using multiple email addresses, including admin@horizonprocessingllc.com.

23.    On September 23, 2021, Defendants registered through GoDaddy.com, LLC, the internet domain www.hpmediationllc.com, that links to an active website that describes HPM as "a debt collection agency that collects your delinquent accounts using our vast network of debt collection experts," with the contact telephone numbers 470-474-6944 and 866-849-2419, and supposedly doing business at 1100 Peachtree Street NE, Suite 200, Atlanta, Georgia 30309, but the address is merely a virtual office.

24.     HPM through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Plaintiff that are described in this complaint.

25.     HPM through its employees and agents directly and indirectly participated in the acquisition, disclosure and use of Plaintiff's stolen, private, personal, financial and account information, without a permissible purpose, as described in this complaint.

26.     Eclipse Legal Solutions LLC, KSL Enterprises United Inc., Horizon Mediation LLC and Horizon Processing & Mediation LLC are sometimes collectively referred to as the "Corporate Defendants" in this complaint.

27.     Defendant Kelvin Stefon Lyles is a natural person, age 51, possibly residing at 1773 Millstream Hollow, Conyers, Georgia 30012. Mr. Lyles is an owner, officer, member, manager, employee and agent of the Corporate Defendants. Mr. Lyles uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Lyles regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Lyles is a "debt collector" as the term is defined and used in the FDCPA. Mr. Lyles is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Lyles is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

28.     On November 9, 2016, Mr. Lyles was charged with wire fraud by the U.S. Attorney's Office for the Northern District of Georgia, (Case No. 1:16-cr-00390-MCH-1), in connection with a scheme to create fake credit histories for false Social Security Numbers, which were used by Mr. Lyles to defraud credit card companies out of more than $350,000.00. On January 18, 2017, Mr. Lyles pleaded guilty pursuant to a plea agreement. On April 25, 2017, Mr. Lyles was sentenced to three years and ten months in prison, to be followed by three years of

supervised release, and ordered to pay restitution in the amount of $353,937.23.

29.     Mr. Lyles (a) created the collection policies and procedures used by the Corporate Defendants, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants, and their employees and agents, (d) drafted, created, approved and ratified the tactics, scripts and written communications used by the Corporate Defendants, and their employees and agents, to collect debts from consumers, including the tactics, scripts and written communications that were used to attempt to collect an alleged debt from Plaintiff as described in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants, and their employees and agents, in their efforts to collect an alleged debt from Plaintiff as described in this complaint.

30.     Mr. Lyles directly and indirectly participated in the efforts to collect an alleged debt from Plaintiff as described in this complaint.

31.     Mr. Lyles directly and indirectly participated in the acquisition, disclosure and use of Plaintiff's stolen, private, personal, financial and account information, without a permissible purpose, as described in this complaint.

32.     The Corporate Defendants, Mr. Lyles, and perhaps others, own, control and use a merchant account, established in the name of "Horizon Mediation," telephone number 404-474-

6940, with an Atlanta, Georgia address, to receive credit card and debit card payments from

Defendants' victims. Money deposited in the merchant account is shared among and distributed

to Defendants, their employees and agents, and perhaps others. The application filed by

Defendants with the ISO and Acquiring Bank to create the merchant account, as well as the

related monthly account statements and other account records, will need to be obtained via

subpoena in discovery from the ISO and Acquiring Bank, so that Plaintiff can identify the other

entities that receive distributions of money from the merchant account.

33.     Non-party Bright Beginnings Financial Co., formerly known as Bright Beginnings

Credit Repair Co., is a Georgia corporation, formed March 1, 2017, and claims to be operating at

200 Ashford Center North, Suite 175, Dunwoody, Georgia 30338. Mr. Lyles is the Chief

Financial Officer of Bright Beginnings Financial Co. It will need to be determined in discovery

whether Bright Beginnings Financial Co. and/or its employees and agents participated in

Defendants' credit identity theft and debt collection scam.

34.     Defendants operate as a common enterprise, working together to coerce and

defraud consumers, collect payments from their victims, and share the profits of their scheme.

35.     An entity that itself meets the definition of debt collector is liable for the unlawful

collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v.*

*National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman &*

*Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15

F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th

Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL

1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

36.    A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

37.    Plaintiff Daniel Smith is a victim of credit identity theft.

38.    In 2013, Mr. Smith borrowed several hundred dollars from a lender, via the internet, in what is commonly known as a "payday loan," for a term of several weeks, at an annual interest rate that exceeded 300 percent.

39.    In Michigan, payday loans are regulated by the Deferred Presentment Service Transactions Act, MCL 487.2122 *et seq.*, which expressly provides that it is not a crime to fail to repay a payday loan.

40.    Mr. Smith used the borrowed funds exclusively to purchase goods and services for personal, family and household purposes, including paying for groceries, gasoline, clothing

and personal services. Mr. Smith never used the borrowed funds for any business purposes. Mr. Smith did not own any business during the time Mr. Smith used the borrowed funds. Mr. Smith never took any business expenses on any federal, state or local income tax returns in connection with Mr. Smith's use of the borrowed funds. Mr. Smith was never reimbursed by any employer for any purchases made with the borrowed funds. Any resulting obligation of Mr. Smith to pay money to repay the borrowed funds was a "debt" as the term is defined and used in the FDCPA, MRCPA and MOC.

41.    Mr. Smith allegedly failed to repay the debt to the original creditor.

42.    The original creditor charged off Mr. Smith's account and related alleged debt.

43.    The original creditor sold the charged-off account and related debt to a debt buyer.

44.    The debt buyer, or a successor in interest, placed Mr. Smith account and related alleged debt with a debt collector for collection.

45.    Mr. Smith paid off the alleged debt.

46.    Even if Mr. Smith still owed money in connection with the account, the debt is no longer judicially enforceable by operation of the applicable Michigan statute of limitations. Stated differently, the account and any related debt are time-barred.

47.    Despite the foregoing, Mr. Smith's account information, along with Mr. Smith's personal and financial information, was compromised, stolen, and repeatedly sold and distributed to and among criminals.

48.    For the past several years, multiple entities operating credit identity theft and debt collection scams have periodically contacted and falsely threatened Mr. Smith with litigation, prosecution and other adverse consequences, and coerced Mr. Smith into paying money to the

credit identity thieves to supposedly satisfy a debt that Mr. Smith does not owe and the credit identity thieves have no right to collect.

49.    As described below, the defendants named in this complaint operate a credit identity theft and debt collection scam, acquired Mr. Smith's stolen account and personal financial information, and used that information to contact and falsely threaten Mr. Smith with litigation, prosecution and other adverse consequences, and coerced the payment of money from Mr. Smith, to supposedly satisfy a debt that Mr. Smith did not owe and the credit identity thieves had no right to collect.

50.    On April 19, 2024, Defendants' employee and agent placed a call to Mr. Smith's cellular telephone and spoke with Mr. Smith. In the ensuing conversation, Defendants' employee and agent made the following representations:

a)    Mr. Smith owed more than $5,681.00 for an unpaid installment loan that went delinquent in 2017.

b)    Defendants are mediators and attorneys.

c)    Defendants had been retained by the original creditor to file a lawsuit against Mr. Smith to collect the debt.

d)    A judgment was going to be entered against Mr. Smith.

e)    Mr. Smith's wages were going to be garnished and liens were going to be placed against Mr. Smith's property.

f)    Mr. Smith's failure to repay the loan was a crime.

g)    Defendants were authorized to move forward and have Mr. Smith prosecuted by the county.

13

h)    Mr. Smith could avoid being sued and prosecuted if Mr. Smith paid money
to Defendants.

51.    On April 19, 2024, in response to Defendants' false threats of litigation,
prosecution, judgments, liens and other adverse consequences, Mr. Smith agreed to pay
$5,681.00 to Defendants, by monthly installment payments, until paid in full.

52.    On April 19, 2024, Defendants sent an email from
admin@horizonmediationllc.com to Mr. Smith, via DocuSign. Attached to the email were
multiple documents, including a document captioned "Payment Authorization Form,"
purportedly authorizing Horizon Mediation LLC to charge Mr. Smith's Visa card for the alleged
debt. Metadata embedded in the documents states that the documents were authored by defendant
Kelvin Stefon Lyles. A copy of the email and documents are attached to this complaint as
Exhibit A.

53.    On April 19, 2024, Defendants charged $400.00 to Mr. Smith's Visa card, and the
funds were deposited in Defendants' Horizon Mediation merchant account.

54.    On June 8, 2024, Defendants caused $1,641.00 to be transferred from Mr. Smith's
credit union account to Defendants' Horizon Mediation merchant account.

55.    On October 30, 2024, Defendants' employee and agent placed a call from
telephone number 920-263-9533 to Mr. Smith's cellular telephone and left the following
message on Mr. Smith's voice mail: "He Daniel. This is Mr. [unintelligible]. I just wanted to give
you a courtesy call to let you know that we will be processing your case out on behalf of the
attorney, Mr. [Jenkins?]. If you have any further questions or like to resolve the case out of court,
please give us a call back at 920-263-9533. 920-263-9533. Thank you."

14

56.     On October 30, 2024, a return call was made to telephone number 920-263-9533, which was answered by Defendants' employee and agent, who identified himself as "Walter" with "Eclipse Legal Solutions," and who made the following representations:

a)      Mr. Smith owed $5,056.00 to Splash Cash for an installment loan taken out by Mr. Smith in 2016, Account Number 403152008, that went delinquent in 2017, and has remained unpaid.

b)      Eclipse Legal Solutions has been retained by Splash Cash to file a lawsuit against Mr. Smith to collect the debt.

c)      Eclipse Legal Solutions has been authorized to move forward and file criminal charges against Mr. Smith with the State of Michigan.

d)      "We have been advised to turn your case over to the County unless you want to settle your case out of court."

e)      If Mr. Smith did not agree to pay $1,000.00 to Defendants that day, "I'll tell them to have you prosecuted and have you picked up."

When Defendants' employee and agent was advised the Mr. Smith could only make a payment that day of $125.00, Defendants' employee and agent terminated the telephone conversation.

57.     On October 30, 2024, Defendants' employee and agent, who identified himself as "Walter" with "Eclipse Legal Solutions," called back, state that he had just spoken with the "attorney," and was authorized to accept Mr. Smith's payment of $125.00.

58.     On October 31, 2024, Defendants sent an email from arbitration@eclipselegalsolutions.com to Smith. Attached to the email was a document on Eclipse Legal Solutions letterhead, captioned "Claim Validation Notice." The letter falsely stated

that Mr. Smith owed $5,056.00 in connection with a Slash Cash Loan or Line of Credit, and that Splash Cash had assigned the account to Eclipse Legal Solutions for collection. A copy of the email and document are attached to this complaint as Exhibit B.

59.    On October 31, 2024, Defendants sent an email from admin@horizonmediationllc.com to Smith, via DocuSign. Attached to the email were multiple documents, including a "Credit Card Recurring Payment Authorization Form," a "Certificate of Completion," and an "Electronic Record and Signature Disclosure." Mr. Smith refused to sign the documents. A copy of the email and documents are attached to this complaint as Exhibit C.

60.    On October 31, 2024, in response to Defendants' false threats of litigation, arrest, prosecution, judgments, liens, and other adverse consequences, Plaintiff authorized a payment to Defendants by a Visa debit card in the amount of $125.00. According to the debit card's issuing bank, the payment was deposited into Defendants' Merchant Account maintained in the name of Horizon Mediation, located in Atlanta, Georgia.

61.    Defendants' repeated use of the described Merchant Account to receive credit card and debit card payments from consumers defrauded by Defendants violated the terms of the agreement between Defendants and Defendants' acquiring bank and Defendants' ISO and payment processor, violated the terms of the agreements between Defendants and Visa and MasterCard, and disqualifies Defendants from maintaining a Merchant Account and accessing the banking system. Defendants' banking records will need be obtained in discovery from Defendants' acquiring bank and ISO so that Plaintiff can name as additional Defendants in this lawsuit, any other entities participating in Defendants' scam.

62.    The above-described threats and representations made by Defendants and their

16

employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by Defendants to coerce and extort the payment of money from thousands of consumers across the country through the use of false threats of litigation and prosecution, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of consumers' stolen account and personal information.

63.    Mr. Smith has never taken out a loan from any entity named Splash Cash.

64.    Mr. Smith has never owed money to any entity named Splash Cash.

65.    Mr. Smith's putative Splash Cash account is counterfeit, and the payment of the related alleged debts that Defendants coerced and extorted from Mr. Smith, and were not owed.

66.    Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

67.    Defendants and their employees and agents falsely represented and inflated the amount of Mr. Smith's alleged debt.

68.    Defendants and their employees and agents falsely represented that Mr. Smith owed a debt that is not owed.

69.    Defendants and their employees and agents falsely represented that they were entitled to collect a debt that they had no right to collect.

70.    Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

71.    Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a stolen or counterfeit account, as well as Mr. Smith's stolen personal and financial information, in an effort to coerce the payment of money from Mr. Smith.

72.    Defendants and their employees and agents wrongfully and falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Smith to collect the alleged debt.

73.    Defendants and their employees and agents wrongfully and falsely represented and falsely implied that a lawsuit already had been filed against Mr. Smith to collect the alleged debt.

74.    Defendants and their employees and agents wrongfully and falsely represented and falsely implied that a lawsuit had been filed against Mr. Smith to collect a time-barred debt, when in fact, the debt was no longer judicially enforceable by operation of Michigan's six-year statute of limitations.

75.    Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

76.    Defendants and their employees and agents falsely represented and falsely implied that the courts were participating in Defendants' efforts to coerce the payment of money from Mr. Smith.

77.    Defendants did not intend to file a lawsuit against Mr. Smith in any court in efforts to collect the alleged debt.

78.    No Defendant has ever filed any lawsuit in any Michigan court to collect any debt from any consumer.

79.    Defendants and their employees and agents falsely represented and falsely implied that a judgment was going to be entered against Mr. Smith.

80.    Defendants and their employees and agents falsely represented and falsely implied

that liens were going to placed against Mr. Smith's property.

81.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Smith had committed a crime.

82.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Smith was going to be arrested.

83.    Defendants and their employees and agents falsely represented and falsely implied that Mr. Smith was going to be prosecuted.

84.    Defendants have regularly and repeatedly engaged in the unauthorized practice of law in Michigan, which is a crime.

85.    The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

86.    The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

87.    The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

88.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

89.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

90.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

91.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

92.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

93.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

94.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

95.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

96.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

97.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

98.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

99.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

100.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

101.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

102.    Defendant and his employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

103.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

104.    Defendants and their employees and agents failed to timely send to Mr. Smith a notice containing the information required by 15 U.S.C. § 1692g(a).

105.    Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

106.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

107.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

108.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

109.    In Michigan, payday loans are regulated by the Deferred Presentment Service Transactions Act, MCL 487.2122 *et seq.*, which expressly provides that it is not a crime to fail to repay a payday loan. Defendants falsely and unlawfully threatened Mr. Smith with criminal prosecution unless Mr. Smith paid money to Defendants.

110.    Michigan law, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary

advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the

state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is

not made. *People v. Maranian*, 359 Mich. 361 (1960).

111.    Defendants and their employees and agents engaged in criminal extortion, a

felony, in their efforts to coerce the payment of money from Mr. Smith. It is an express violation

of the FDCPA to commit a crime in connection with efforts to collect an alleged debt.

112.    Defendants and their employees and agents violated the Identity Theft and

Assumption Deterrence Act, 18 U.S.C. § 1028, in their efforts to coerce the payment of money

from Mr. Smith. It is an express violation of the FDCPA to commit a crime in connection with

efforts to collect an alleged debt.

113.    In connection with efforts to collect an alleged debt from Mr. Smith, defendants

and their employees and agents obtained and used personal information regarding Mr. Smith

from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint),

TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe),

or Interactive Data, LLC.

114.    The database used by defendant was derived in part from non-public motor

vehicle  records and searches made with the database are subject to the terms of the Drivers

Privacy Protection Act. Subscribers to the database must sign an application stating that the

subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the

database, the subscriber is confronted with a screen that requires the subscriber to affirmatively

state the permissible purpose under the DPPA for which the subscriber is requesting the personal

information.

115.    The DPPA was enacted in response to growing concerns over the ease with which

stalkers and other criminals could obtain personal information from state departments of motor

vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

116.    The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person
> knowingly to obtain or disclose personal information, from a motor vehicle
> record, for any use not permitted under section 2721(b) of this title.

> (b) False representation. – It shall be unlawful for any person to make false
>  representation to obtain any personal information from an individual's motor
> vehicle record.

18 U.S.C. § 2722.

117.    The DPPA also states:

> "personal information" means information that identifies an individual, including
> an individual's photograph, social security number, driver identification number,
> name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

118.    The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a
> motor vehicle record, for a purpose not permitted under this chapter, shall be
> liable to the individual to whom the information pertains, who may bring a civil
> action in a United States district court.

18 U.S.C. § 2724(a).

119.    The DPPA enumerates the only "permissible uses" for which personal

information may be obtained. 18 U.S.C. § 2721(b).

120.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose

or use personal information regarding Mr. Smith.

24

121.    Defendants used the database to obtain, disclose and use personal information regarding Mr. Smith.

122.    Defendants made a false representation to the provider of the database to obtain personal information regarding Mr. Smith that was derived from Mr. Smith's motor vehicle record.

123.    Alternatively, the entity that obtained Mr. Smith's personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Mr. Smith that was derived from Mr. Smith's motor vehicle record.

124.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

125.    Defendants knowingly obtained, disclosed and used Mr. Smith's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

126.    Defendants did not have a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Smith's personal information obtained from the database.

127.    Defendants did not have Mr. Smith's consent, permission, authorization or waiver to obtain Mr. Smith's personal information from the database.

128.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

129.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y.

2003).

130.    Defendants intentionally and wilfully violated the DPPA.

131.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, invasion of privacy, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which Mr. Smith should be compensated in an amount to be established at trial.

**V.    Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

132.    Plaintiff incorporates the foregoing paragraphs by reference.

133.    Defendants have violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

26

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

## Count 2 – Drivers Privacy Protection Act

134.    Plaintiff incorporates the foregoing paragraphs by reference.

135.    Defendants have violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining, using or disseminating plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

e)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4).

## Count 3 – Michigan Regulation of Collection Practices Act

136.    Plaintiff incorporates the foregoing paragraphs by reference.

137.    Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

**Count 4 – Michigan Occupational Code**

138.   Plaintiff incorporates the foregoing paragraphs by reference.

139.   Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)   Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)   Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)   Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)   Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)   Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f)   Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages pursuant to M.C.L. § 339.916;

b)   Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

Dated: November 4, 2024                  /s/ Phillip C. Rogers
                                         Phillip C. Rogers (P34356)
                                         Attorney for Plaintiff
                                         Centennial Plaza, Ste. 205
                                         2851 Charlevoix Dr. SE
                                         Grand Rapids, MI 49546-7090
                                         (616) 776-1176
                                         ConsumerLawyer@aol.com